IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAY ANDERSON, | |
| Plaintiff, | |
| v. | Case No. 1:18-cv-03236 |
| RIX THORSELL, | Jury Trial Demanded |
| Defendant. | |

**Complaint**

The Plaintiff, Ray Anderson, submits his Complaint against Defendant, Rix Thorsell, and alleges as follows:

**Jurisdiction and Venue**

1. This action arises under the Lanham Act 15 U.S.C. § 1051 *et seq.* and the Stored Communications Act (SCA) 18 USC 2701 *et seq.* This action further arises out of defendant's breach of contract, his violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1 et seq., his violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., and his intentional interference with business advantage, among other claims.

2. This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Anderson's claim for a trademark infringement arises under the Lanham Act and Anderson makes a further claim arising under the SCA.

3. This court has supplemental jurisdiction under 28 U.S.C. § 1367 over the pendent state-

law claims brought in this action because they are so related to the Lanham Act claim and/or the SCA claim for which this court has original jurisdiction that they form part of the same case and controversy.

4. Plaintiff, Ray Anderson ("Anderson" or "Plaintiff") is an Illinois resident with his principal place of business at 309 N Prospect St., Wheaton, IL 60187, DuPage County, Illinois.

5. Defendant, Rix Thorsell ("Defendant" or "Thorsell"), is an individual residing at 420 Saint Charles Road, Glen Ellyn, IL, 60137, DuPage County, Illinois.

6. The court has personal jurisdiction over Thorsell because he resides in Illinois within the Northern District of Illinois.

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Thorsell resides in the Northern District of Illinois.

8. Venue alternatively is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Plaintiff's claims occurred within the Northern District of Illinois. In particular, for example, on information and belief, Thorsell accessed a YouTube Channel and locked Anderson out of the Channel from within the Northern District of Illinois. On information and belief, Thorsell continues to control the YouTube Channel and prevent Anderson from using and controlling the Channel from within the Northern District of Illinois.

**Parties**

9. Anderson is and has been a drywall specialist since 1976. He owns and operates a drywall installation and repair business called R.A.C.E. Drywall, Inc., which has been in operation since 1993. Anderson is the owner of a YouTube channel using the trademark "THE DRYWALL DOCTOR," that provides information about drywall installation and repair.

10. Thorsell was a part-time drywall worker for R.A.C.E. Drywall Inc. Thorsell assisted Anderson with the YouTube Channel according to an agreement between Anderson and Thorsell.

**Nature of the Action**

11. Anderson brings this action to recover control of the YouTube channel and for damages arising out of Thorsell's wrongful and unauthorized takeover of the YouTube Channel and associated accounts.

12. Thorsell has wrongfully taken control and locked Anderson out of his own YouTube channel and associated accounts. As a result, Thorsell has stolen and is receiving revenue from the Channel. Anderson demanded that Thorsell return control of the YouTube channel and other associated accounts to Anderson, but Thorsell refused and continues to refuse to do so.

13. Thorsell's wrongful takeover and control of the YouTube Channel results in trademark infringement by Thorsell's control of and profit from the YouTube channel bearing Anderson's trademark, cybersquatting by Thorsell's registration and use of drywalldoctor.org, a violation of the Stored Communication Act by Thorsell's unauthorized access to stored electronic communications in connection with the YouTube Channel, breach of contract by Thorsell's failure to comply with the terms of an agreement between Anderson and Thorsell relating to the YouTube Channel, a violation of Anderson's right of publicity by the public performances and displays of Anderson's image and likeness in videos on the YouTube Channel without Anderson's permission, among other violations further explained below.

14. Thorsell's acts have damaged and continue to damage Anderson, including financially, and reputationally.

**Facts**

15. In order for Anderson to spread his drywall knowledge, he started privately producing videos for his friends and family on Facebook with tips and tricks for drywall installation and repairs in January of 2016.

16. Anderson discussed his videos with one of his part time drywall workers, Thorsell.

17. Thorsell told Anderson that Thorsell had experience with editing and publishing videos and offered to help Anderson with a YouTube channel.

18. On September 18, 2016, Anderson created a YouTube channel (the "Channel" or the "YouTube Channel") under the trademark "THE DRYWALL DOCTOR," which is available at https://www.youtube.com/channel/UCHZ1ELrSnYrnw5ujBZZbhog.

19. On the date that the Channel was created, Thorsell acknowledged Anderson's ownership of the Channel by describing the Channel as "your channel" in an email communication to Anderson.

20. Anderson chose the trademark "THE DRYWALL DOCTOR" as inspired by his nickname with some of his clients due to his precision and "miracle working" ability with certain drywall projects.

21. Since at least September 18, 2016, Anderson provided in commerce via the YouTube Channel, in connection with the trademark THE DRYWALL DOCTOR ("Anderson's Trademark"), educational and entertainment services, namely, providing online videos featuring drywall installation, repair, and finishing and related tools ("Anderson's Services"). Anderson is the owner of U.S. Trademark Application no. 87/902,777 for THE DRYWALL DOCTOR mark. Anderson used THE DRYWALL DOCTOR mark by, among other things, prominently displaying the mark on the Channel and in the videos therein.

22. Since at least September 18, 2016, Anderson has been and is the star of all videos on the Channel and has complete discretion of what material is to be posted to the Channel.

23. Since at least September 18, 2016 and at all times relevant, Anderson hired Thorsell as an independent contractor to edit, upload, and post videos to the Channel. Thorsell did edit, upload, and post videos to the YouTube Channel.

24. In consideration for Thorsell's editing, uploading, and posting services, Anderson agreed to pay to Thorsell 15% of the revenue received from the Channel.

25. Both Anderson and Thorsell have been operating under the terms of The Drywall Doctor Channel Agreement (the "Agreement"). A copy of the Agreement is attached as Exhibit A.

26. Anderson has, pursuant to the terms of the Agreement, made payments to Thorsell for Thorsell's services.

27. After creating the Channel, Anderson gave Thorsell the username and password to the Channel to allow Thorsell to edit and publish videos.

28. As a part of Anderson's online initiatives, he created a Patreon account, where users/viewers could donate money to support the YouTube Channel. The Patreon page is available at https://www.patreon.com/thedrywalldoctor.

29. The following other accounts are associated with the Channel and THE DRYWALL DOCTOR trademark ("Other Associated Accounts"):

    a.   Twitter: https://www.twitter.com/TheDrywallDoc

    b.   Instagram: https://www.instagram.com/thedrywalldoctor/

    c.   Linkedin: https://www.linkedin.com/in/thedrywalldoctor/

30. Anderson is the rightful owner of the Other Associated Accounts and the public pages

corresponding to those accounts. The public pages corresponding to each of the Other Associated Accounts comprise THE DRYWALL DOCTOR trademark, a link back to the Channel, and feature Ray Anderson's name, image, and/or likeness. The links from public pages back to the Channel drive increased traffic and viewership on the Channel.

31. In or about late February 2018, Anderson started pursuing a separate business ("Separate Business") in addition to his drywall business and the YouTube Channel.

32. Thorsell expressed his desire to be a part of this Separate Business, but Anderson declined.

33. In retaliation, Thorsell impermissibly changed the password to the YouTube Channel account, thereby locking Anderson out of the Channel's account and preventing Anderson from making any changes to or control of the YouTube Channel.

34. Thorsell also changed the password of the Patreon account and has received money from the Patreon account.

35. Thorsell was not authorized by Anderson to make account access changes to the YouTube Channel account.

36. Thorsell was not authorized by Anderson to make account access changes to the Patreon Account.

37. Upon learning that Thorsell had taken over control of the YouTube Account and Patreon, on or about March 5, 2018, Anderson demanded Thorsell to return access to the YouTube Channel.

38. On or about March 5, 2018, Thorsell sent Anderson a text message that proclaimed that Anderson was "no longer a part of the Drywall Doctor," and that Thorsell owned "this channel and all it's [sic] content."

39. Thorsell has refused and continues to refuse to return access to the YouTube Channel account, the Patreon account, and the Other Associated Accounts to Anderson, despite Anderson's demands for access.

40. On information and belief, Thorsell after taking control of the YouTube Channel is receiving all of the revenue that is generated from the YouTube Channel.

41. Subsequent to Thorsell's take-over of control of the YouTube Channel, Thorsell has posted videos to the YouTube Channel ("Subsequently Posted Videos"). Such videos include videos featuring Anderson. Anderson has received a request from a third party to remove at least one of the Subsequently Posted Videos. The third party is a customer of Anderson's dry wall business who would prefer that the room shown in the Subsequently Posted Video not be shown online. To Anderson's detriment and damage, Anderson is unable to accommodate this customer's request because Thorsell has locked Anderson out of control of the Channel.

42. As of April 2018, the Channel has over 7,500 subscribers and over 1.17 million views of the videos on the Channel.

43. The YouTube Channel now advises viewers of "our new website! http://www.drywalldoctor.org."

44. On information and belief, the domain name DRYWALLDOCTOR.ORG ("Domain Name") was first registered on April 25, 2018.

45. On information and belief, Thorsell registered the Domain Name and launched the website at the Domain Name ("Website").

46. The website at the Domain Name uses the mark THE DRYWALL DOCTOR, uses the tag line "a trusted source for all-thing-drywall," includes embedded YouTube videos from the YouTube Channel, and includes at least one prominent link back to the YouTube Channel. The

About Page of the Website provides, in part: "Moving forward, we're going to be taking all the knowledge we've put on the channel over the past two years and start to organize it into a useful library of sorts so that anyone can find and use the videos that are relevant to them. We've also got some big plans in the works, which you can learn more about by checking out our Patreon at https://www.patreon.com/thedrywalldoctor and joining for inside information and more!"

47. Thorsell's action to register the Domain Name and to launch the associated Website were not authorized by Anderson.

## Count I: Trademark Infringement; 15 U.S.C. 1125(a)

48. Anderson repeats and restates his allegations from paragraphs 1 through 47 as his allegation for this paragraph 48.

49. Anderson used THE DRYWALL DOCTOR mark continuously in commerce in connection with rendering Anderson's Services via the YouTube Channel since at least as early as September 18, 2016.

50. As a result of Anderson's use of THE DRYWALL DOCTOR mark, Anderson has accrued common law trademark rights and substantial goodwill in THE DRYWALL DOCTOR mark.

51. THE DRYWALL DOCTOR is a distinctive mark in connection with Anderson's Services.

52. When Thorsell seized control of the YouTube Channel and locked Anderson out of the Channel's account, Thorsell began unauthorized use THE DRYWALL DOCTOR mark in commerce, in connection his control and operation of the YouTube channel, with the same services ("Thorsell's Services") as Anderson's Services to the same YouTube and online

audience.

53. Thorsell has infringed Anderson's THE DRYWALL DOCTOR mark in commerce by various acts including, operating the Channel under THE DRYWALL DOCTOR mark without Anderson's consent while locking Anderson out of control of the Channel. This use of the mark is likely to cause confusion, to cause mistake, and to deceive.

54. Thorsell's use of THE DRYWALL DOCTOR on the Channel in connection with Thorsell's Services in commerce is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of the Thorsell with Anderson and as to the origin, sponsorship, or approval of Thorsell's Services by Anderson.

55. Thorsell's use of THE DRYWALL DOCTOR on the Channel in connection with Thorsell's Services is likely to deceive, confuse, and mislead users/viewers/customers and prospective users/viewers/customers to believe that Thorsell's Services originate, emanate from or are authorized or approved by, or are in some manner associated or affiliated with Anderson.

56. Thorsell's use of THE DRYWALL DOCTOR on the public pages of the Other Associated Accounts in commerce is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of the Thorsell with Anderson and as to the origin, sponsorship, or approval of Thorsell's Services by Anderson.

57. Thorsell's use of THE DRYWALL DOCTOR mark via public pages of the Other Associated Accounts has and is causing damage to Anderson.

58. Thorsell's use of THE DRYWALL DOCTOR and DRYWALL DOCTOR in connection with the Domain Name and the Website in commerce is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of the Thorsell

with Anderson and as to the origin, sponsorship, or approval of Thorsell's Services by
Anderson.

59. Thorsell's use of THE DRYWALL DOCTOR mark in connection with the Channel,
the public pages of the Other Associated Accounts, the Domain Name, and the Website has
and is causing damage to Anderson. Anderson is being damaged at least by the loss of revenue
from the YouTube Channel and the loss of control of the YouTube Channel.

60. By reason of Thorsell's acts alleged herein, Anderson has and will suffer damage to its
business, reputation, and good will and the loss of revenue Anderson would have made but for
Thorsell's acts.

61. The conduct of Thorsell is causing and, unless enjoined and restrained by this Court,
will continue to cause Anderson great and irreparable injury that cannot fully be compensated
or measured in money. It would be difficult to ascertain the amount of compensation which
would afford Anderson adequate relief for the continuing acts of Thorsell, and a multiplicity of
judicial proceedings would be required. Anderson has no adequate remedy at law. Anderson is
entitled to injunctive relief prohibiting Thorsell from further infringing Anderson's Trademark,
and ordering Thorsell to turn over to Anderson control of the YouTube Channel, the Other
Associated Accounts, the Domain Name, Website, and any other property comprising
Anderson's Trademark.

62. Thorsell's foregoing acts of infringement under 15 USC 1125(a) are willful and
intentional, with utter disregard of and with indifference to the rights of Anderson.

63. Thorsell's forgoing acts constitute an exceptional case under 15 USC 1117.

## Count II: Cybersquatting/Cyberpiracy; 15 U.S.C. 1125(d)

64. Anderson repeats and restates his allegations from paragraphs 1 through 63 as his allegation for this paragraph 64.

65. The Domain Name is identical to Anderson's THE DRYWALL DOCTOR mark except that is lack the word "The." The lack of "the" in the Domain Name does not distinguish the domain name from THE DRYWALL DOCTOR mark.

66. The Domain Name is confusingly similar to Anderson's THE DRYWALL DOCTOR mark.

67. THE DRYWALL DOCTOR mark was distinctive at or before the time of registration of the Domain Name.

68. Thorsell had and has a bad faith intent to profit from THE DRYWALL DOCTOR mark in registering and using the Domain Name, at least by misappropriating from Anderson all of the revenue of the Channel, where Anderson was the rightful owner of the Channel.

69. Thorsell acted in bad faith intending to profit in registering and using the Domain Name at least because Thorsell knew at the time the Domain Name was registered and used that (1) he had wrongfully locked Anderson out of the Channel and refused to return Anderson's access to the Channel and other associated accounts, (2) Anderson was the rightful owner of THE DRYWALL DOCTOR trademark, (3) Anderson had the ultimate say in any creative or business decisions involving the Drywall Doctor under the Agreement, which included the use and registration of the Domain Name, (4) Thorsell did not have Anderson's consent to create and use the Domain Name; and (5) the Website corresponding to the Domain name includes embedded videos from the Channel, after Anderson was locked-out of the Channel, and a prominent link back to the Channel.

70. Thorsell violated 15 USC 1125(d) by registering and using the Domain Name.

**Count III: Stored Communications Act Violation; 18 U.S.C. 2701**

71. Anderson repeats and restates his allegations from paragraphs 1 through 70 as his allegation for this paragraph 71.

72. The YouTube Channel is and has at all relevant times been associated with an Account User Name that is the email address: thedrywallphd@gmail.com ("Account User Name"). The Account User Name, together with the corresponding password, is used to access and control the YouTube Channel. The Account User Name is also associated with a Gmail email account under the same address: thedrywallphd@gmail.com ("Email Account"). The same user name (thedrywallphd@gmail.com) and corresponding password controls access to both the YouTube Account and the Email Account.

73. Thorsell accessed, and now continues to access and control the YouTube Channel via the Account User Name. The Account User Name and corresponding password provide Thorsell with access to the Email Account.

74. The YouTube Channel Account is configured so that the Email Account receives electronic communications from YouTube/Google regarding payments made and revenue generated from the YouTube Channel. And the Email Account did received and, on information and belief, continues to receive and store such electronic communications. The YouTube Account is configured so that the Email Account receives electronic communications related to the YouTube Account from YouTube/Google and third parties. The YouTube account About Page publically lists that Email Account for the purposes of allowing third parties to communicate with the operator of the YouTube Account, such as for business inquiries.

75. Thorsell was not authorized to change the login password and/or other access credentials to the Email Account or the YouTube Account.

76. When Thorsell changed the login password and/or other access credentials to the Email Account and the YouTube Account, Thorsell locked Anderson out of access to the Email Account and the YouTube Account. In doing so, Thorsell intentionally accessed without authorization and/or exceeded an authorization to access a facility through which an electronic communication service is provided. And, Thorsell altered and/or prevented authorized access by Anderson to a wire or electronic communication, in the form of at least emails, including new and unopened emails, within the Email Account, while it is in electronic storage in within Google's Gmail electronic communications services at a facility through which an electronic communication service is provided.

77. At least when Anderson demanded Thorsell return access to the YouTube Channel to Anderson on March 5, 2018 ("Anderson's March 5, 2018 Demand for Access"), Thorsell was no longer authorized to use the YouTube Channel or access the Email Account associated with the YouTube Channel and further Thorsell was no longer authorized to access any email messages within the Email Account.

78. On information and belief, after Anderson's March 5, 2018 Demand for Access, Thorsell intentionally accessed, without authorization, emails, including new and unopened emails, stored on Google's servers in connection with the Email Account at a facility through which an electronic communication service is provided. In doing so, Thorsell intentionally accessed without authorization and/or exceeded an authorization to access a facility through which an electronic communication service is provided, and thereby obtains access to a wire or electronic communication while it is in electronic storage in such system.

79. Therefore, Thorsell has made unlawful access to stored communications in violation of 18 USC 2701. Anderson is aggrieved by such violations. Anderson has been damaged by such violation at least in the form of lost revenue from the YouTube Channel and the inability to receive or control communication to and from the Email Account.

80. Anderson seeks and requests a preliminary and permanent injunction under 18 USC 2707 ordering Thorsell to return access to the YouTube Channel and Email Account, and preventing Thorsell from further access to the YouTube Channel and Email Account.

81. Anderson seeks and requests damages and Thorsell's profits under 18 USC 2707(c).

82. Anderson seeks and requests punitive damages under 18 USC 2707(c).

83. Anderson seeks and requests costs of this action along with attorney's fees under 18 USC 2707(c).

## Count IV: Breach of Contract

84. Anderson repeats and restates his allegations from paragraphs 1 through 83 as his allegation for this paragraph 84.

85. Thorsell and Anderson made an agreement, which was titled "The Drywall Doctor Channel Agreement," ("Agreement"), a copy of which is attached as Exhibit A. Therefore, there was an offer and acceptance. The Agreement recites an effective date of September 18, 2016.

86. The Agreement contains definite and certain contractual terms. The Agreement recounts services to be provided and compensation. Therefore there was consideration.

87. Anderson performed all of his contractual obligations under the Agreement. For example, Anderson made payments to Thorsell for his work editing, uploading and posting videos, according to the terms of the Agreement.

88. The parties operated under the Agreement until March 2018 when Thorsell materially breached by taking over control of the YouTube Channel and locking out Anderson.

89. Thorsell's actions of removing Anderson's access from the YouTube Channel and Patreon account constitute a breach of contract. For example, the Agreement provides that "Ray [Anderson] will have ultimate say in any creative or business decisions involving the Drywall Doctor." Thorsell's action of changing the login credentials and locking Anderson out of the YouTube Channel, the Patreon Account, and the Email Account, and refusing to return access, subverts Anderson's ultimate say in any creative or business decisions involving THE DRYWALL DOCTOR YouTube Channel. This constitutes a material breach of the Agreement.

90. Thorsell's action of refusing to provide Anderson access to the Other Associated Accounts subverts Anderson's ultimate say in any creative or business decisions involving The Drywall Doctor. This constitutes a material breach of the Agreement.

91. Thorsell's action of creating the Domain Name and the Website, without Anderson's consent and after Anderson demanded access to the Channel be restored, subverts Anderson's ultimate say in any creative or business decisions involving The Drywall Doctor. This constitutes a material breach of the Agreement.

92. Anderson is damaged by Thorsell's breaches. For example, Anderson had been damaged by the loss of such revenue from the YouTube Channel.

**Count V: Violations of Right of Publicity**

93. Anderson repeats and restates his allegations from paragraphs 1 through 92 as his allegation for this paragraph 93.

94. Based on the text messages sent by Thorsell, Thorsell has video footage of Anderson

stored on his computers or other devices and on the YouTube Channel that is purportedly "owned" by Thorsell.

95. Thorsell has been in sole control of the YouTube Channel since at least March 2018.

96. After impermissibly taking control of the Channel, Thorsell has posted Subsequently Posted Videos comprising Anderson's name, image or likeness without Anderson's consent.

97. Thorsell has, upon information and belief, published these videos on the Channel with the purpose of earning advertising revenue.

98. Since Thorsell impermissibly took control of the Channel, Anderson has not consented to the use of his name, image or likeness on the Channel.

99. Anderson has demanded Thorsell return control of the Channel to Anderson, but Thorsell refused.

100. Since Thorsell impermissibly took control of the Channel, Thorsell's operation and control of the Channel comprising Anderson's name, image, or likeness is a use of Anderson's name, image, or likeness without Anderson's consent.

101. Despite Anderson's demand, Thorsell has continued to use Anderson's name, image and likeness on the YouTube Channel.

102. Thorsell's continued, unconsented, use of Anderson's name, image and likeness on the YouTube Channel is willful and without regard for Anderson's right to publicity.

103. Thorsell's operation and control of the Other Associated Accounts comprising public pages having Anderson's name, image, or likeness is a use of Anderson's name, image, or likeness without Anderson's consent.

104. Therefore, Thorsell's use of Anderson's name, image and likeness without his consent violates the Illinois Right of Publicity Act, 765 ILCS 1075/1 et. seq.

**Count VI: Illinois Uniform Deceptive Trade Practices Act Violations**

105. Anderson repeats and restates his allegations from paragraphs 1 through 104 as his allegation for this paragraph 105.

106. Section (2)(a) of the Illinois Uniform Deceptive Trade Practices Act, ("DTPA") provides that a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: (1) passes off goods or services as those of another; (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; …[or] (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have…." 815 ILCS 510/2(a).

107. Thorsell engaged in a deceptive trade practice by passing off the Thorsell's Services as those of Anderson in operating and posting to the YouTube Channel at least on and after March 5, 2018.

108. Thorsell engaged in a deceptive trade practice by passing off the Thorsell's Services as those of Anderson in operating and posting to the public pages of the Other Associated Accounts at least on and after March 5, 2018.

109. Thorsell engaged in a deceptive trade practice by passing off the Thorsell's Services as those of Anderson in creating, operating and posting to the Domain Name / Website at least on and after March 5, 2018.

110. Thorsell engaged in a deceptive trade practice by the unauthorized use of THE

DRYWALL DOCTOR on the Channel in connection with Thorsell's Services in commerce, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of the Thorsell with Anderson and as to the origin, sponsorship, or approval of Thorsell's Services by Anderson.

111. Thorsell engaged in a deceptive trade practice by the unauthorized use of THE DRYWALL DOCTOR on the public pages of the Other Associated Accounts, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of the Thorsell with Anderson and as to the origin, sponsorship, or approval of Thorsell's Services by Anderson

112. Thorsell engaged in a deceptive trade practice by the unauthorized use of THE DRYWALL DOCTOR and DRYWALL DOCTOR on and in connection with the Domain Name and the Website, which is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of the Thorsell with Anderson and as to the origin, sponsorship, or approval of Thorsell's Services by Anderson.

113. Under Section 3 of the DTPA, the court may grant injunctive relief on terms that the court considers reasonable. 815 ILCS 510/3.

114. Anderson requests entry of a preliminary and permanent injunction that returns Anderson access to the YouTube Channel, the Other Associated Accounts, the Domain Name, and Website and prevents Thorsell from using THE DRYWALL DOCTOR mark.

115. Thorsell willfully engaged in the foregoing deceptive trade practices. Anderson further requests an award of reasonable attorneys' fees and costs under Section 3 of the DTPA. 815 ILCS 510/3.

### Count VII: Intentional Interference with Business Advantage

116. Anderson repeats and restates his allegations from paragraphs 1 through 115 as his allegation for this paragraph 116.

117. Anderson had a reasonable expectation of continuing to render Anderson's Services via the YouTube Channel, through YouTube.com, a leading online video platform.

118. Thorsell had knowledge of Anderson's business expectancy because he saw the growing number of subscribers to and views on the YouTube Channel.

119. Thorsell purposefully interfered with Anderson's legitimate business expectancy in continuing to provide Anderson's Services through the YouTube platform services.

120. Thorsell's action of changing the access credentials to the YouTube Channel prevented Anderson from continuing to provide Anderson's Services through the YouTube platform service. Thorsell's action of changing the access credentials involved communicating a desire to change the access credentials to YouTube along with the proposed new access credentials. In doing so, Thorsell, at least implicitly, indicated to YouTube that he was authorized to change the access credentials, when he was not.

121. Thorsell's representations to YouTube required to change the access credentials to the YouTube Channel were not justified, were motivated by malice, and were wrongful. In particular, Thorsell knew that it did not have the right to change the access credentials or to prevent Anderson from accessing the YouTube Channel or receiving revenue generated thereby.

122. Thorsell's representations were the proximate cause of YouTube not allowing Anderson to access the YouTube Channel.

123. Anderson has incurred damages directly resulting from Thorsell's interference with

business expectancy, in that Anderson has been unable to control and provides services to viewers and end users through YouTube's prominent, oft-visited website.

124. Anderson requests entry of a judgment awarding him lost profits damages in an amount to be determined at trial.

**Count VIII: Unfair Competition**

125. Anderson repeats and restates his allegations from paragraphs 1 through 124 as his allegation for this paragraph 125.

126. Thorsell's aforesaid activities constitutes unfair competition and an infringement of Anderson's common law trademark rights in THE DRYWALL DOCTOR mark.

127. Anderson has been damaged by Thorsell's unfair competition and infringement.

128. This unfair competition and infringement has caused, and unless enjoined, will continue to cause Anderson irreparable harm.

129. Anderson has no adequate remedy at law.

**Count IX: Breach of Implied-In-Fact Contract**<br>(Pled in Alternative to Count IV)

130. Anderson repeats and restates his allegations from paragraphs: 1 through 23, 28 through 47, 49 through 63, 65 through 68, 72 through 83, 94 through 104, 106 through 115, 117 through 124, and, 126 through 129 as his allegation for this paragraph 130.

131. Thorsell drafted the language "Ray [Anderson] will have ultimate say in any creative or business decisions involving the Drywall Doctor…" of "The Drywall Doctor Channel Agreement," attached as Exhibit A, and provided that language to Anderson.

132. On the date that the Channel was created, Thorsell acknowledged Anderson's ownership of the Channel by describing the Channel as "your channel" in an email

communication to Anderson.

133. Thorsell took business and creative instructions from Anderson concerning the Channel prior to March 2018, which is consistent with Thorsell's expression that "Ray [Anderson] will have ultimate say in any creative or business decisions involving the Drywall Doctor…" and is consistent with Thorsell's acknowledgement that Anderson owned the Channel when describing the Channel as "your channel" to Anderson. Such instructions included whether and when videos should be posted and the content of the descriptions that accompanied the videos. Further, prior to March 2018, Ray instructed Thorsell to take down a video that Thorsell posted, and Thorsell did take it down.

134. Almost all the videos featured on the Channel comprise Anderson's image and likeness. This is consistent with Anderson's ownership of the Channel.

135. Anderson did pay Thorsell 15% of the revenue from the Channel prior to March 2018 at least for Thorsell's work video editing, uploading, and publishing on the Channel.

136. As a result of the parties actions, there was a contract implied in fact between Thorsell and Anderson concerning the Channel AND THE DRY WALL DOCTOR where (1) Anderson will have ultimate say in any creative or business decisions involving The Drywall Doctor and the Channel and (2) Anderson would pay Thorsell 15% of the revenue from the Channel when Thorsell performed work editing, uploading, and publishing on the Channel.

137. Thorsell breached the contract implied in fact when he locked Anderson out of access and control of the Channel and refused to provide Anderson with access to the Channel, the Patreon account, the Email Account, and the Other Associated Accounts.

138. Anderson is damaged by such breach.

**Request for Relief**

Plaintiff, Ray Anderson, respectfully asks this Court to enter judgment in its favor and against Thorsell, on all Counts of this Complaint, and to enter an Order:

A. Enjoining Thorsell to provide and return to Anderson all access to the YouTube Channel, Patreon Account, the Email Account, the Other Associated Accounts, and any other account associated with the Channel or THE DRYWALL DOCTOR mark, including all passwords, user names, and other access credentials;

B. Enjoining Thorsell to transfer control of the Domain Name and Website to Anderson;

C. Enjoining Thorsell to deliver all images, video, and footage of Anderson including copies thereof in his possession, custody and/or control to Anderson;

D. Enjoining Thorsell and all other agents, or persons acting in concert with Thorsell from control or access to the YouTube Channel, Patreon Account, the Email Account, the Other Associated Accounts, and any other account associated with the Channel or THE DRYWALL DOCTOR mark;

E. Enjoining Thorsell and all other agents, and/or persons acting in concert with Thorsell from using Anderson's name, image or likeness for commercial purposes;

F. Finding that Thorsell materially breached the Agreement or the Implied-in-Fact Contract and therefore Anderson is excused and discharged from further paying Thorsell compensation under the Agreement or the Implied-in-Fact Contract and performing any other of his obligations of the Agreement or the Implied-in-Fact Contract;

G. Awarding to Anderson actual damages and/or statutory damages, as Anderson may elect if necessary, as a result of Thorsell's wrongful conduct in an amount to be

determined at trial;

H.  Awarding to Anderson any profits received by Thorsell in connection with the
    YouTube Channel, Patreon account, the Other Associated Accounts, and any of his
    wrongful conduct;

I.  A finding that Thorsell's violations of the Lanham Act were willful;

J.  A finding that Thorsell's violations of the Illinois Right to Publicity Act were willful;

K.  A finding that Thorsell's violations of the Illinois Uniform Deceptive Trade Practices
    Act were willful;

L.  Increasing the award of damages under 15 USC 1117(a) to three times actual damages;

M.  Finding that Thorsell's violations of the Lanham Act constitute an exceptional case;

N.  Awarding Anderson his attorney fees;

O.  Awarding Anderson his costs;

P.  Awarding to Anderson punitive damages as authorized under 18 USC 2707(c) and 765
    ILCS 1075/40(b) and any other applicable law; and,

Q.  Awarding Anderson such other relief as the Court deems proper and just.

* * * * *

**Jury Demand**

Anderson demands a trial by jury on all issues so triable.

* * * * *

Date: May 7, 2018.

Respectfully Submitted,

RAY ANDERSON,

By his attorneys,


/s/Eric R. Waltmire
Eric R. Waltmire, ARDC No. 6287632
eric@ericksonlawgroup.com
Erickson Law Group, PC,
1749 S. Naperville Rd. Suite 202
Wheaton, IL 60189
Phone: 630-665-9404